**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

                                      No. 17-CR-02949-MV-1

v.

DASHAWN ROBERTSON,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant Dashawn Robertson's Motion for Order Compelling Specific Discovery. Doc. 219. The government filed a response in opposition [Doc. 223] and Mr. Robertson filed a reply [Doc. 252]. Having considered the briefs, relevant law, and being otherwise fully informed, the Court finds that the motion is well-taken in part and will be **GRANTED IN PART** as described in this order.

**BACKGROUND**

Mr. Robertson is charged in a three-count superseding indictment with Obstruction of Justice by Retaliating Against a Witness, Victim, or Informant, in violation of 18 U.S.C. § 1513(a)(1)(B); Possessing and Discharging a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c); and Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Doc. 86. The charges arise from his act of allegedly shooting an individual named Desmick Sharber eight times in the early morning hours of September 12, 2017 in retaliation for Mr. Sharber's cooperation with the federal government in a criminal case two years earlier. *See* Doc. 38 at 2. Mr. Robertson pled not guilty to the charges at an arraignment

held on December 11, 2017 [Doc. 9] and a trial in the case is forthcoming.

In the instant motion, Mr. Robertson asks the Court to compel the government to disclose two categories of discovery: (1) victim Desmick Sharber's medical records from the University of New Mexico Hospital (UNMH), which the defense has also sought through a Rule 17(c) subpoena; and (2) all documentation and records of compensation paid to any government witness, including any promises of financial reward, as well as any threats, made to the witness or their family. Doc. 219 at 1.

In response, the government submits that it has not provided the defense with Mr. Sharber's medical records because it does not possess them. Doc. 223 at 1. It continues that it has not threatened any of its witnesses but has warned them that lying to the Federal Bureau of Investigations (FBI) or in testimony is a federal offense. *Id*. at 1–2. As to witness compensation, the government represents that there is none in this case beyond the statutorily determined witness attendance fee of $40 per day and other covered expenses for travel, food, lodging, etc. *Id*. at 3–4. The government then explains that it is not inclined to provide the defense with the requested victim reimbursement information because it is arguably not discoverable under *Brady v. Marland*, 373 U.S. 83 (1964); because it does not have the final expense amounts yet for its witnesses; and because it does not want to reveal the details of its witnesses' travel arrangements or their whereabouts while in New Mexico. *Id*.

In reply, Mr. Robertson argues that "even if the government does not have [Mr. Sharber's medical records] in their actual possession, they are records that the government can obtain and [are] therefore within their control and subject to disclosure." Doc. 252 at 2. He also clarifies that in addition to monetary payments, he is asking the government to disclose any promises made or benefits conferred to any of its witnesses, including benefits that would potentially reduce the

sentences or prison terms of its incarcerated witnesses. *Id*. at 3. Specifically, Mr. Robertson requests information about "any agreements or letters the government has prepared or provided on behalf of [Natalie Fisher] to shorten her sentence, such as letters to the parole board." *Id*. Finally, Mr. Robertson clarifies that he "never requested either in e-mail correspondence or within his Motion, information regarding the location of where witnesses will be staying during trial, any information as to their physical location, or flight information." *Id*. at 2.

The Court then discussed this motion with the parties at the November 12, 2020 pretrial conference in this case. In response to the Court's questioning, the government represented that it has not made any promises or offers of monetary compensation to Natalie Fisher or its confidential informant witnesses. Doc. 254 at 4. The government additionally represented that it has not offered to write Ms. Fisher a letter of support and that it is unaware of any such promises made by its case agent. *Id*. At the Court's instruction, the government agreed to check with its case agent to ensure that any promises made to its witnesses have been disclosed. *Id*.

**STANDARD**

There is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). The government is obligated, however, to make the disclosures required by the Federal Rules of Criminal Procedure and by the Constitution's Due Process clause. *See* Fed. R. Crim. P. 16. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In the Tenth Circuit, to establish a *Brady* violation, a defendant must show: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the defense. *See Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007). Evidence is material under *Brady* if "there is a reasonable probability

3

that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 470 (2009). Put another way, *Brady*'s materiality threshold is met if the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court made clear that the government's discovery obligations under *Brady* extend to any promises of leniency made to government witnesses because such promises are relevant to the witness' credibility. *Id*. at 154–55. Because the government in *Giglio* had failed to disclose a non-prosecution agreement between a prosecutor and a key witness, the Supreme Court reversed the defendant's conviction. *Id*. at 150–51, 155. The Court has since explained that impeachment evidence falls within the scope of *Brady* because it is "favorable to [the] accused" and "may make the difference between conviction and acquittal" if disclosed. *United States v. Bagley*, 473 U.S. 667, 676 (1985) (citations omitted). That includes payments to government witnesses, because defendants can use evidence of such payments to impeach the witnesses by showing their "bias or interest." *Id*.

## DISCUSSION

Mr. Robertson first asks the Court to order the government to turn over Mr. Sharber's medical records from UNMH. Doc. 219 at 1. He argues that "even if the government does not have these records in their actual possession, they are records that the government can obtain and [are] therefore within their control and subject to disclosure." Doc. 252 at 2. For support, Mr. Robertson cites generally to the Court's discovery order, but he does not provide any cases or other authority explaining why the government has an obligation under either *Brady* or Rule 16 of the Federal Rules of Criminal Procedure to obtain and disclose hospital records that it does not possess. *See id*. A review of the relevant caselaw reveals that while prosecutors cannot avoid their *Brady* obligations by compartmentalizing different investigatory arms of the government, *see United*

*States v. Deutsch*, 475 F.2d 55, 57 (5th Cir.1973), *overruled on other grounds by United States v. Henry*, 749 F.2d 203 (5th Cir.1984), the prosecution "does not have a duty to obtain evidence from third parties." *United States v. Harry*, 927 F. Supp. 2d 1185 (D.N.M. 2013) (citing cases including *United States v. Combs*, 267 F.3d 1167, 1173 (10th Cir. 2001)). Nor has Mr. Robertson explained how records within the government's "possession, custody, or control" under Rule 16 includes records they do not possess but can obtain from unaffiliated third parties. *See* Fed. R. Crim. P. 16. By that logic, the government would have an obligation to seek out, obtain, and disclose many categories of potentially favorable information that the defense can also obtain on its own. The Court sees no support for that proposition in the caselaw, and it once again reminds defense counsel of their duty to support their assertions with relevant authority. *See* District of New Mexico Local R. Crim. P. 47.7 ("A motion, response or reply must cite authority in support of legal positions advanced."). Because the government has represented that it does not have Mr. Sharber's medical records in its possession, this request will be denied. Mr. Robertson is still able to seek these records through a Rule 17(c) subpoena and such a subpoena has already been served on UNMH. *See* Doc. 259.

Mr. Robertson's next request is that the government disclose any monetary payments, threats, or promises of benefit made to any government witnesses, including any promises by the government or its agents to write letters of support on behalf of its witnesses who are in custody. The Court agrees that this information is discoverable under *Brady* and its progeny, including *Giglio* and *Bagley*, because it is relevant impeachment evidence that can be used to expose potential sources of witness bias. *See Bagley*, 473 U.S. at 676. The Court will therefore order the government to disclose any such information, including any promises made to its witnesses by **any of the law enforcement officers working on this case**, because promises that they made

5

would be within the government's constructive knowledge or possession. *See United States v. Buchanan*, 891 F.2d 1436, 1443 (10th Cir. 1989) ("Since ... investigative officers are part of the prosecution, the taint on the trial is no less if they, rather than the prosecutors, were guilty of nondisclosure. Knowledge by police or investigators is therefore imputed to the prosecution under *Brady*.") (citations and internal quotations omitted); see *also Smith v. Sec'y of New Mexico Dept. of Corr.*, 50 F.3d 801, 825 n.36 (10th Cir. 1995) ("Clearly, if the prosecution had actual knowledge that several arms of the State were involved in the investigation of a particular case, then the knowledge of those arms is imputed to the prosecution.").

Finally, at the pretrial conference the government asked the Court to order reciprocal discovery requiring Mr. Robertson to turn over the same information it will have to turn over—payments to witnesses, promises made, and benefits conferred—on the same date it will be ordered to produce its discovery. On its face, this request for reciprocity sounds fair enough. The government did not provide a source of authority requiring reciprocal discovery on these issues, however, and the Court has so far been unable to locate any. The government's constitutional duty to disclose impeachment evidence under *Brady* and its progeny stems from the Due Process clauses of the Fifth and Fourteenth Amendments, which state that no person shall be deprived of life, liberty, or property without due process of law. *See* U.S. Const. amends. V and XIV. The Court is aware of no authority holding that these amendments place symmetrical discovery obligations on the defense; after all, the defense does not have the power to deprive the government of *its* life, liberty, or property. The Court's discovery order also reflects the fact that *Brady* and *Giglio* place discovery burdens on the government, not the defense. *See* Doc. 10 at 4–5 ("*The Government* shall make available to the Defendant by the time required by the applicable law all materials for which disclosure is mandated by Brady v. Maryland, 373 U.S. 83 (1963), by Giglio

v. United States, 405 U.S. 150 (1972).") (emphasis added).

But what about Rule 16? It is true that Rule 16 requires some reciprocal discovery: specifically, if a defendant requests disclosure of documents and objects under Rule 16(a)(1)(E) and the government complies, then the defendant must similarly permit the government to "inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings, or places, or copies or portions of any of these items." Fed. R. Crim. P. 16(b)(1)(A). Even within this reciprocity provision, however, the discovery obligations are not symmetrical. The government must turn over any requested documents or objects if it "intends to use the item in its case-in-chief at trial" **or** if the item is "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). The defense, by contrast, must only turn over documents or objects that it "intends to use… in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A). In other words, Rule 16 requires the government to turn over a written agreement to compensate a witness even if it does not intend to use that document in its case-in-chief at trial, because such an agreement would be "material to preparing the defense." *See* Fed. R. Crim. P. 16(a)(1)(E). But Rule 16 does not appear to place any such reciprocal discovery obligation on the defense as long as it is not introducing a similar agreement in its case-in-chief at trial. *See* Fed. R. Crim. P. 16(b)(1)(A).

Ultimately, the government will of course be permitted to ask defense witnesses questions about their compensation and other sources of potential bias on cross-examination. But until the government can produce authority explaining why it is entitled to symmetrical discovery on these issues under the Constitution or Rule 16, the Court will not order Mr. Robertson to produce it.

## CONCLUSION

For the foregoing reasons, Mr. Robertson's Motion for Order Compelling Specific Discovery [Doc. 219] is hereby **GRANTED IN PART**. It is therefore **ORDERED** that:

1. The government is not required to produce Desmick Sharber's hospital records from UNMH because those records are not in its actual or constructive possession.

2. The government is required, however, to disclose to the defense any monetary payments or offers of financial benefit made to any of its witnesses by any Assistant United States Attorney; United States Attorney's Office staff member or paralegal; investigator; any local, state, or federal law enforcement officer working on this case; and any other person known to the prosecution working on this case. The information to be disclosed includes any payments for travel, lodging, food, and statutorily required witness attendance fees, as well as any payments in addition to those amounts. The government is *not* required to disclose any identifying details regarding its witnesses' travel arrangements or where they will be staying in New Mexico; this paragraph only applies to amounts paid, promised, or arranged.

3. The government is also required to disclose to the defense any promises made or benefits conferred to any of its witnesses, including benefits that would potentially reduce the sentences or prison terms of its incarcerated witnesses. This includes, but is not limited to, any promises to write letters of support on behalf of witnesses in prison or facing criminal charges; any promises of non-prosecution; any promises with regard to its witnesses' conditions of confinement; and any other promises or conversations that could be viewed as involving a potential benefit to the witness. The discovery obligations in this paragraph extend to any such promises made or benefits conferred by any Assistant United States Attorney; United States Attorney's Office staff member or paralegal; investigator; any local, state, or federal law enforcement officer working on this case; and any other person known to the prosecution working on this case.

4. To ensure compliance with the above provisions, the government is **ORDERED** to diligently investigate whether any of the individuals listed above made any payments or statements deemed discoverable by this order.

5. The government shall conduct such an investigation and produce any such discovery **no later than Monday, December 7, 2020 at 5:00 p.m. Mountain Time.** This deadline is meant to ensure that the defense receives any responsive information early enough to prepare an effective defense at trial, and the deadline will *not* be extended based on any additional trial continuances. The government will also be required to continue to disclose any responsive information received past the above deadline **as soon as it is known** to the Assistant United States Attorneys of record in this case.

6. The Court will not order Mr. Robertson to provide reciprocal discovery at this time for the reasons explained above. The government will be permitted, however, to file a supplemental brief at any time before the above discovery deadline explaining why the reciprocal discovery it is requesting is supported by controlling authority, including but not limited to the Constitution, the Federal Rules of Criminal Procedure, or Tenth Circuit law. If the government provides authority supporting reciprocal discovery, the Court will order Mr. Robertson to turn over such discovery on the same deadline as the government.

8

Dated this 18th day of November, 2020.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE