**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.                                                                                 No. 17-CR-02949-MV

DASHAWN ROBERTSON,

        Defendant.

### DEFENDANT'S RESPONSE IN OPPOSITION TO UNITED STATE'S MOTION TO EXCLUDE TOM JAMESON, ESQ.

Defendant, Mr. Dashawn Robertson, through counsel, Ryan J. Villa and Sarah M. Gorman, respectfully files this Response to the United States' Motion [Doc. 391]. Mr. Jameson's testimony is relevant to educate the jury regarding federal sentencing, and to help explain the statutory and guideline sentences that each jailhouse informant faces under the plea agreements they entered, and how a departure for Section 5K1.1 could affect those statutory and guideline sentences. While cross-examination of the two informants may reveal this information, it is unknown the level of sophistication each has with federal sentencing in general, or their own circumstances specifically. In defense counsel's experience, federal sentencing is not intuitive, and clients often struggle to understand it throughout their case. Indeed, even young lawyers struggle to understand federal sentencing and sentencing guidelines calculations. Mr. Jameson will simply educate the jury on how sentencing works in federal court, how sentencing guidelines are calculated, how and when a 5K1.1 motion gets filed, and what affect it can have on a guideline sentence and mandatory minimum sentence, such as the 15-year mandatory minimum sentence that CW 2 faces absent a 5K1.1 Motion. He can also discuss the Section 3553(a) factors and how those apply at sentencing.

He will also testify to what the statutory sentences are that each CW pleaded guilty to, and an estimated guideline sentence based on the plea agreements.

This is an objective inquiry that in no way bears on what the two informants "believe" to be true. Mr. Robertson has no idea what the informants believe or whether their beliefs about their actual statutory and guideline sentences are even accurate. Further, the informants have every incentive to minimize their understanding and obfuscate the benefits they expect to receive in order to improve their credibility with the jury. Mr. Robertson should not be limited to what the jailhouse informants understand or believe, and it would be completely inappropriate to call the informants lawyers to testify. This would plainly violate the informant's lawyers' duty of confidentiality pursuant to Rule 16-106 NMRA of the Rules of Professional Responsibility.  It would also violate attorney-client privilege. Moreover, Mr. Jameson, cannot, and does not plan to, suggest to the jury what he thinks each CW may receive as a sentence as a result of their testimony. Obviously, only the judge in their cases knows what the sentence will be, and only after receiving their PSRs, sentencing memoranda, and any other submissions.  Accordingly, Mr. Jameson will only discuss the process and the procedure, as well as the estimated guideline sentence for each CW based on the sentencing guidelines.

Contrary to the government's suggestion, this will not suggest to the jury what Mr. Robertson's sentence might be if convicted as prohibited by this Court's Order.  Neither CW is charged with the same crimes as Mr. Robertson, so there is no risk the jury might hear a statutory and guideline sentence that is similar to Mr. Robertson's. Further, even if they were charged with the same or similar crimes, it would violate Mr. Robertson's Sixth Amendment Confrontation right if he were prohibited from asking the CWs about their expected sentences, so there is no reason Mr. Jameson could not also testify to the same. *See United States v. Mirabal*, 876 F.3d 1029, 1035

(10th Cir. 2017) (assuming without deciding that it violated the right to confrontation to limit cross-examination of cooperating witness, who was charged in the same conspiracy as the defendant, regarding his sentence because, in part, it "could cause the jury to speculate about [the defendant's] own sentence").

And while Mr. Jameson was noticed late in the proceedings, it was only ten days after the government disclosed the second jailhouse informant, whose plea and sentencing guidelines is vastly more complicated than the first informant who was disclosed last year. Below is a table with counsel's initial estimate of CW # 2's statutory and guideline exposure:

| **SUPERCEEDING INDICTMENT COUNTS** |
|---|---|---|---|
| Count # | Charge | Statute: | Statutory min/max |
| 1 | Sex trafficking of children or by force, fraud, or coercion. Conspiracy. | 18 U.S.C. § 1591(a)(1-2), (b)(1) / § 1594(c). | 15/Life |
| 2 | Sex trafficking of children or by force, fraud, or coercion. | 18 U.S.C. § 1591(a)(1), (b)(1) | 15/Life |
| 3 | Sex trafficking of children or by force, fraud, or coercion. | 18 U.S.C. § 1591(a)(1), (b)(1) | 15/Life |
| 4 | Sex trafficking of children or by force, fraud, or coercion. | 18 U.S.C. § 1591(a)(1), (b)(1) | 15/Life |
| 5 | Sex trafficking of children or by force, fraud, or coercion. | 18 U.S.C. § 1591(a)(1), (b)(1) | 15/Life |
| 6 | Interstate and foreign travel or transportation in aid of racketeering enterprises | 18 U.S.C. §§ 1952(a)(3)(A) and 2. | 0/5 |
| 7 | Maintaining drug-involved premises / Conspiracy | 21 U.S.C. § 856, 846 | 0/20 |
| 8 | Maintaining drug-involved premises | 21 U.S.C. § 856 | 0/20 |
| 9 | Distribution or manufacturing in or near schools and colleges | 21 U.S.C. § 860(a) | 10/80[1] |
| 10 | Laundering of monetary instruments | 18 U.S.C. § 1956(a)(l)(B)(i). | |

---

[1] This is based off 21 U.S.C. § 841(b)(1)(B) level quantities, which is then doubled pursuant to § 860(a).

| USSG ADJUSTED OFFENSE LEVEL | | |
|---|---|---|
| **Section** | **Explanation** | **Level Increase/Decrease** |
| § 2G1.1 (A victim other than a minor) | Base offense level for promoting a commercial sex act if the offense of conviction is 18 U.S.C. § 1591(b)(1) | 34 |
| § 3B1.1(c) | Aggravating Role | 2 |
| § 3C1.3 | Commission of Offense While on Release | 3 |
| **Adjusted Offense Level** | | **39** |

| CRIMINAL HISTORY | | | |
|---|---|---|---|
| **Section** | **Explanation** | **Case Number** | **Points** |
| § 4A1.2(e)(3) | Nevada Robbery (1991) | | 0 |
| § 4A1.1(a) | Possession of a controlled substance (1998) | D-202-CR-1998-03560 | 3[2] |
| § 4A1.2(a)(2) | Trafficking cocaine with intent to distribute (1999) | D-202-CR-1999-00060 | 0[3] |
| § 4A1.2(e)(3) | Possession of a controlled substance (2005) | D-202-CR-2005-01190 | 0 |
| § 4A1.1(c) | Trafficking cocaine with intent to distribute (2008) | D-202-CR-2008-01000 | 1[4] |
| § 4A1.1(c) | Trafficking controlled substances: possession with intent to distribute (2015) | D-202-CR-2016-03839 | 1 |
| **Total Criminal History Points** | | | **5** |
| **Criminal History Category** | | | **III** |

---

[2] This sentence counts under § 4A1.2(e)(1) because he was incarcerated within the 15 years prior to the instant offense occurring in 2017 (2002). This is assuming that he served the time he was sentenced to through September 2002. There were fillings on the case in September 2002, but they are not available. The last available pleading has him incarcerated January 2002. *See* § 4A1.2(a)(2) n. 2, n. 11.

[3] The case from 1999 was from an arrest that occurred in September of 1998 and the case from 1998 was from an arrest that occurred in October of 1998, which are likely to be treated as a single sentence § 4A1.2(a)(2) because the sentence was imposed on the same day and there does not seem to be an intervening arrest noted in the pleadings.

[4] Suspended sentence within 10 years of the commencement of the instant offense. § 4A1.2(e)(2)

As these tables demonstrates, CW #2, faces a complex array of statutory and guideline penalties. An expert like Mr. Jameson is the perfect witness to explain this to the jury. While counsel admittedly sought to find such an expert before this second CW was disclosed, the need to find one became more urgent when CW #2 was disclosed, and it became apparent the impeachment would be much more complicated.

The undersigned counsel has for the last several years thought of the notion of calling an expert like Mr. Jameson in this situation after numerous experiences cross-examining informants who either did not understand federal sentencing, or intentionally feigned ignorance to stifle the effect of cross-examination on this topic. Upon entering in this case in late January and learning of the first jailhouse informant, counsel began calling lawyers to locate a potential expert. Counsel spoke to over half a dozen lawyers before locating Mr. Jameson. Many lawyers who were willing to help could not either because of a conflict with the parties or other witnesses, or a scheduling issue with the impending trial date. Further, counsel had a tremendous amount of other work to do on this case as the briefing that has been done in this Court and the Tenth Circuit reflects. Not to mention reviewing the 300-plus pleadings, the discovery, meeting with Mr. Robertson, investigating the facts, and preparing for complicated hearings such as the *Daubert* hearing in February and pretrial hearing in March. Thus, the late disclosure was not intentional to gain some advantage.

The Court or the government is free to inquire of Mr. Jameson about this history if necessary to resolve this issue, but counsel first spoke to Mr. Jameson about being an expert on Friday, March 12.  Mr. Jameson asked to take the weekend to consider it and was not available Monday, March 15, due to a planned ski trip. Counsel spoke to him again on March 13th and he agreed to provide the services and prepare a resume so counsel could request funding via CJA. Mr.

Jameson provided the information for the funding request on March 14th or 15th, and counsel submitted the funding request on March 16th. Even though funding was not approved until March 19th, counsel filed the Expert Notice on March 18th, if only to provide the government more notice.

Moreover, what tactical advantage would really be gained by delaying Mr. Jameson's disclosure? This is not some novel, technical, or complicated area of expert testimony that will take the government weeks or months to prepare for or require them to retain an expert to understand. Rather, this is information which the government knows quite well and should not have any trouble preparing for cross-examination. Indeed, they likely were preparing for it in preparing the examinations of CWs 1 and 2. Both prosecutors themselves could be such an expert given they likely deal with sentencing issues such as this every week, if not daily. Indeed, it is the government that has a tactical advantage in that it has CW # 1's PSR—the best evidence of his estimated sentence—but refuses to disclose it. It also knew both CWs sentencing and guideline ranges long before the defense because it helped craft the plea agreements both entered. The government also has a tactical advantage because it knows that no one other than the CWs can explain these complex sentences absent testimony like Mr. Jameson's. Mr. Jameson simply levels the playing field.

For these reasons, the Court should not prohibit the testimony of Mr. Jameson.

>Respectfully submitted,
>
>*/s/ Ryan J. Villa*
>Ryan J. Villa
>5501 Eagle Rock Ave NE, Suite
>C2 Albuquerque, NM 87113
>(505) 639-5709
>ryan@rjvlawfirm.com

*/s/ Sarah M. Gorman*
Sarah M. Gorman
1201 Lomas NW,
Suite A Albuquerque,
NM 87102
(505) 243-5442
smgorman.law@gmail.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2021, I filed the foregoing electronically through the CM/ECF system, which caused counsel for the United States to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

 */s/ Ryan J. Villa*
RYAN J. VILLA