IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

                                                      No. 17-CR-02949-MV-1

v.

DASHAWN ROBERTSON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the government's Motion to Exclude Late-Noticed Defense Expert Tom Jameson, Esq. Doc. 391. Defendant Dashawn Robertson filed a response in opposition [Doc. 398] and the government filed a reply [Doc. 400]. Having considered the briefs, the relevant law, and being otherwise fully informed, the Court finds that the motion is not well-taken and will be **DENIED**.

## BACKGROUND

Mr. Robertson is charged in a three-count superseding indictment with Obstruction of Justice by Retaliating Against a Witness, Victim, or Informant, in violation of 18 U.S.C. § 1513(a)(1)(B); Possessing and Discharging a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c); and Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Doc. 86. The charges arise from his alleged act of shooting an individual named D.S. eight times in the early morning hours of September 12, 2017 in retaliation for D.S.'s cooperation with the federal government in a criminal case two years earlier. *See* Doc. 38 at 2. Mr. Robertson pled not guilty to the charges at an arraignment held on December 11, 2017 [Doc. 9] and a trial in the case is set for May 17, 2021.

On March 18, 2021, Mr. Robertson filed a notice stating his intent to call Tom Jameson as an expert witness. Doc. 375. Mr. Jameson is a "retired federal public defender with expertise in federal criminal practice, procedure, and sentencing as it relates to the use of jailhouse informants." *Id*. at 1. Mr. Robertson proffers that Mr. Jameson

> can educate the jury about how sentencing is conducted in federal court, what the sentencing guidelines are, and how they operate in relation to a 5K1.1 motion by the government. He can testify about the use of jailhouse informants who are pending federal charges and how the informants' cooperation may affect their sentence. [He] is expected to testify within the scope of his expertise regarding the estimated sentences under the applicable statutes and sentencing guidelines for Confidential Witnesses (CWs) 1 and 2, pre and post plea. He will also testify to the affect [sic] a motion for departure for substantial assistance can have on the applicability of a mandatory minimum sentence or sentencing guidelines. He may also rebut any testimony from any law enforcement officer of CWs 1 or 2 that concerns the legal aspects of the cooperation agreements with the United States and CWs 1 or 2.

*Id*. at 1–2.

In the instant motion, the government asks the Court to exclude Mr. Jameson as a witness. Doc. 391. Although the government "does not doubt his expertise … or the sincerity of his expected testimony," it argues that "the objective truth, or Tom Jameson's analysis of the objective truth, of the benefits available to cooperators in general or these two confidential witnesses in specific" is "not relevant to the bias of those witnesses." *Id*. at 2. Instead, the government argues, the relevant question is what the witnesses believe about their sentencing situation, and "[t]o the extent their advice from their lawyer has shaped their belief, asking that lawyer what the lawyer believes the objective truth of the witness's sentencing situation would be the proper inquiry (though asking what the lawyer advised their client could draw and objection)." *Id*. The government also argues that the Court should exclude Mr. Jameson as a witness because the defense filed his expert notice ten days after the Court's deadline, causing the government "extensive" prejudice that likely cannot be cured with a continuance. *Id*. at 3–6. Finally, the

government argues that Mr. Jameson's testimony would violate the Court's order at Doc. 129 prohibiting discussion of punishment or sentencing before the jury because it could "invite the jury to consider how that system might apply to [Mr. Robertson] if he is convicted." *Id*. at 2–3.

In response, Mr. Robertson argues that Mr. Jameson's testimony is relevant and should be permitted. Doc. 398. He argues that he has "no idea what the informants believe or whether their beliefs about their actual statutory and guideline sentences are even accurate. Further, the informants have every incentive to minimize their understanding and obfuscate the benefits they expect to receive in order to improve their credibility with the jury." *Id*. at 2. He continues that "it would be completely inappropriate to call the informants['] lawyers to testify. This would plainly violate the informant's lawyers' duty of confidentiality pursuant to Rule 16-106 NMRA of the Rules of Professional Responsibility. It would also violate attorney-client privilege." *Id*. Mr. Robertson adds that Mr. Jameson "cannot, and does not plan to, suggest to the jury what he thinks each CW may receive as a sentence as a result of their testimony. … [He] will only discuss the process and the procedure, as well as the estimated guideline sentence for each CW based on the sentencing guidelines." *Id*. On the issue of the Court's prior order prohibiting discussion of punishment or sentencing before the jury, Mr. Robertson argues that Mr. Jameson's testimony "will not suggest to the jury what Mr. Robertson's sentence might be if convicted" because "[n]either CW is charged with the same crimes as Mr. Robertson, so there is no risk the jury might hear a statutory and guideline sentence that is similar to Mr. Robertson's." *Id*. Finally, Mr. Robertson argues that the Court should excuse the late notice of Mr. Jameson's expert testimony because the defense spoke to "over half a dozen lawyers before locating Mr. Jameson," many of whom could not assist "because of either a conflict with the parties or other witnesses, or a scheduling issue with the impending trial date." *Id*. at 5. Mr. Robertson also points out that the

government only disclosed the identity of its second cooperating witness ten days before the expert notice, and that the delayed disclosure should not cause the government much prejudice because Mr. Jameson will be testifying to information that the government already knows well, the sentencing exposure of the its cooperating witnesses, and because the prosecutors on this case deal with these kinds of federal sentencing issues on a weekly, if not daily, basis. *Id*. at 3, 6.

In reply, the government "accepts defense counsel's timing explanation." Doc. 400 at 2. It nevertheless maintains that Mr. Jameson's proposed testimony is "functionally irrelevant to the potential bias of those two government witnesses and should be excluded." *Id*. at 1. In other words, the government argues that Mr. Robertson should only be allowed to inquire with the cooperating witnesses themselves about the sentencing benefits they expect to receive. *Id*.

**DISCUSSION**

The Court is unpersuaded by the government's arguments and will not take the drastic step of excluding Mr. Jameson as a witness. First, the proposed testimony is relevant. As the Court recently explained in response to the government's motion to exclude a *different* defense expert, "[t]o be relevant under Rule 401 of the Federal Rules of Evidence, evidence need not be earth-shattering, bulletproof, or even strong. It need only have some tendency to make a fact of consequence 'more or less probable than it would be without the evidence.'" Doc. 340 at 17 (citing Fed. R. Evid. 401)). Mr. Jameson's testimony clearly meets that bar. The fact of consequence is whether Mr. Robertson confessed his guilt to the government's cooperating witnesses while they were in jail together, a claim Mr. Robertson calls "outlandish." Doc. 393 at 1. Mr. Jameson's testimony bears directly on that issue because it goes to the cooperating witnesses' credibility and bias. More specifically, Mr. Jameson will explain the sentences the cooperating witnesses appear to be facing in their respective federal cases and how their testimony might be skewed by the

4

possibility that the government will move to reduce those sentences if they testify in a way that helps it convict Mr. Robertson. *See supra* at 2.

In response, the government argues that what really matters on the issue of bias is what the cooperating witnesses *believe* about their sentencing exposure, not the sentences they are actually facing. That might be true. But where exactly does the government think its witnesses' beliefs are coming from? Criminal defendants do not form beliefs about the sentences they are facing out of thin air. They are advised about their potential sentences by their attorneys, who themselves look to the applicable statutes and the Sentencing Guidelines. And if a defendant decides to plead guilty, as both of the cooperating witnesses in this case have done, the law requires that they be advised of the potential sentence they are facing in a plea hearing. *See* Fed. R. Crim. P. 11(b)(1) (explaining that before a court accepts a guilty plea, it must place the defendant under oath and address them "personally in open court" to inform them of a number of facts, including "any maximum possible penalty, including imprisonment, fine, and term of supervised release" as well as "any mandatory minimum penalty"). There is also a strong incentive for a court advising a defendant on their potential sentence at a plea hearing to get it right, because the plea might otherwise be involuntary and thus invalid. *See, e.g., United States v. Libretti*, 38 F.3d 523, 529 (10th Cir. 1994) ("To determine whether a plea is voluntary, a court must assess whether the defendant fully understood the consequences of the plea.") (citations and internal brackets omitted).

For all of these reasons, the actual guidelines ranges and statutory penalties the cooperating witnesses in this case are facing are highly relevant because they are almost certainly contributing to the witnesses' beliefs about their sentencing exposure and the potential benefits they could reap from testifying against Mr. Robertson. The government's argument to the contrary—that its

cooperating witnesses' actual sentencing exposure is irrelevant at trial—is both wrong and hard to comprehend. For the reasons Mr. Robertson has pointed out, the government should also know better than to suggest that he can elicit this information from the cooperating witnesses' attorneys, who are dutybound not to disclose their confidential conversations with their clients. *See* Doc. 398 at 2.

Nor is the Court persuaded by the government's other arguments on why Mr. Jameson should be excluded as a witness. As Mr. Robertson explains in his response, Mr. Jameson's testimony about the sentences the government's cooperating witnesses are facing will not violate the Court's order prohibiting the same information about Mr. Robertson because the cooperating witnesses are facing different federal charges (with the exception of the Felon in Possession charge Mr. Robertson is facing in his second trial and to which CW #1 has pled guilty). Doc. 398 at 2. If convicted, Mr. Robertson will also be sentenced on the basis of his own criminal history as well as his personal history and characteristics, sentencing factors which are by definition unique to him. Finally, the Court agrees with Mr. Robertson that Due Process and the Sixth Amendment entitle him to cross-examine the government's cooperating witnesses about the sentences they are facing and any resulting bias even if the jury might glean some limited information about Mr. Robertson's own sentencing exposure from that inquiry. *Id*. And to the extent the government is still arguing that it was prejudiced by the late notice of Mr. Jameson's testimony, that prejudice has been cured by the Court's recent continuance of the trial until May 17th. Doc. 403.

## CONCLUSIONS

For the reasons set forth above, the government's Motion to Exclude Late-Noticed Defense Expert Tom Jameson, Esq. [Doc. 391] is hereby **DENIED**. As in its memorandum opinion and order denying the government's last motion to exclude a defense expert, the Court once again

warns the government that "the exclusion of a defense witness is an extreme remedy that it should not seek lightly, especially where the alleged rule violation has created little if any prejudice." Doc. 340 at 13 n.2 (citing *United States v. Brown*, 592 F.3d 1088, 1090 n.4 (10th Cir. 2009)).

DATED this 9th day of April, 2021.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE