# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                              No. 17-CR-02949-MV-1

DASHAWN ROBERTSON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Dashawn Robertson's Notice of Stipulations and Objections to United State[s]'s Exhibits. Doc. 383. In it, Mr. Robertson objects to Government Exhibits 41(2) and 41(3), recordings of two of his jail calls. *Id.* at 2. The government filed a response in opposition in which it attached transcripts of the calls [Doc. 413] and it also provided the Court with copies of the audio recordings. Mr. Robertson filed a reply. Doc. 419. Having considered the briefs, exhibits, relevant law, and being otherwise fully informed, the Court finds that Mr. Robertson's objections are well-taken in part and will be **GRANTED IN PART**.

### BACKGROUND

Mr. Robertson is charged in a three-count superseding indictment with Obstruction of Justice by Retaliating Against a Witness, Victim, or Informant, in violation of 18 U.S.C. § 1513(a)(1)(B); Possessing and Discharging a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c); and Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Doc. 86. The charges arise from his alleged act of shooting an individual named D.S. eight times in the early morning hours of September 12, 2017 in

retaliation for D.S.'s cooperation with the federal government in a criminal case two years earlier. *See* Doc. 38 at 2. Mr. Robertson pled not guilty to the charges at an arraignment held on December 11, 2017 [Doc. 9] and a trial in the case is set for May 17, 2021.

In the instant Notice of Stipulations and Objections, Mr. Robertson indicates that the government intends to introduce Government's Exhibits 41(2) and 41(3), the recordings of two of his jail calls, at trial. Doc. 383 at 2. More specifically, the government intends to introduce the entire call in Exhibit 41(2) and a 53-second clip of the call in Exhibit 41(3). *Id*. Mr. Robertson objects to the jail calls as irrelevant under Rules 401 and 402 of the Federal Rules of Evidence and, if they are relevant, substantially more prejudicial than probative under Rule 403. *Id*. (citing Fed. R. Evid. 401, 402, and 403). He argues that "the calls are difficult to understand, the context of the conversation is not apparent, and they paint Mr. Robertson in an unfair light because he is speaking in slang and using cuss words." *Id*. He adds that the calls would inform the jury that he is in custody, a fact the jury would not otherwise hear. *Id*.

The government filed a response in opposition to the objections. Doc. 413. It also attached transcripts of the calls [*see id*. at Exs. 1 and 2] and provided copies of the audio recordings to the Court, which the Court has reviewed. In light of Mr. Robertson's objections, the government proposes a shortened version of the call in Exhibit 41(2), the relevant portion of which is transcribed in Pages 4–12 of the government's transcript. Doc. 413 at 4. The call involves Mr. Robertson speaking to an unknown male. *Id*. at Ex. 1. In the relevant portion, the two go back and forth on various topics, including a person named Reggie jumping and beating a person named John [*id* at 4]; the names of people who are and are not in Mr. Robertson's pod at the jail [*id*. at 5–6]; the fact certain people were threatening to jump Mr. Robertson [*id*. at 6]; an upcoming court hearing Mr. Robertson says he has on the seventh of the month [*id*. at 7]; things people are posting

2

on Facebook [*id*. at 8–9]; and how "they," likely the government, are trying to "bury" Mr. Robertson [*id*. at 12]. The call is also laced with slang and profanity throughout, with both men using the N-word frequently and Mr. Robertson making statements like "because, look, shit, fuck that for me," "I'm squeezing balls and yanking," and "[INAUDIBLE] fucked up. [INAUDIBLE] fuck that n****. That's what the fuck he get." *Id*. at 4, 5, 6.

The government argues that the call is "critical evidence" of (1) Mr. Robertson's "use of paperwork to determine who is a 'snitch'" (2) his "willingness to use violence to solve his problems," (3) his "participation in witness intimidation on behalf of others," and (4) his expectation that "others will assist him in intimidating witnesses." *Id*. With regard to Mr. Robertson's alleged "use of paperwork," the government points to his statement that "You know you ain't going to never see no paperwork on me" and other statements he made using the word "snitch." Doc. 413 at 2. With regard to his alleged "willingness to use violence to solve his problems," the government points to a statement where Mr. Robertson says he's "trying to bite a [sic] eyeball" on someone's "fucking face" and his comment about squeezing balls and yanking. *Id*. at 1. And with regard to Mr. Robertson's alleged "participation in witness intimidation on behalf of others" and his alleged expectation that "others will assist him in intimidating witnesses," the government points to statements where Mr. Robertson is saying that he needs people to show up for him, especially "close to the trial date," that he needs their "presence," and that he needs people to "kind of, like, play chess, not checkers with this shit and try[] to help [him] get through this shit." *Id*. at 1–2. The government also points to statements where Mr. Robertson says "If the shoe's on the other foot, I be walking for n*****" and "if n***** just show up and keep it G, I'm forever in n***** debt." *Id*. at 2.

Government's Exhibit 41(3) is a brief clip from another jail call in which Mr. Robertson

instructs his girlfriend, Deziree Gonzales, to tell a third person that she is "SS's girlfriend." Doc. 413 at 3. The government argues that this excerpt is relevant because it contains Mr. Robertson's "self-identification as SS," which is "direct evidence of his identity." *Id*. Mr. Robertson's identity as SS is an important issue at trial because the victim in this case, D.S., "identified the man who shot him as SS before also identifying him by a photograph show-up." *Id*.

In reply, Mr. Robertson argues that the government's interpretation of the first call, Exhibit 41(2), is "blatant speculation." Doc. 419 at 1. He argues that the government is "attempting to distort these phone calls to fit their theory of the case, when the conversation in this call is not clear or unambiguous." *Id*. Mr. Robertson submits, for example, that the portion of the call about his alleged "willingness to use violence" is actually about his fear for his safety in custody and his need to protect himself. *Id*. at 3. The portion about his alleged attempts to intimidate witnesses is actually about "the importance of having the presence of individuals at his court date." *Id*. And the portion about his alleged "preoccupation" with snitches is actually about the fact that he would never snitch himself. *Id*. Mr. Robertson also argues that the government has failed to provide a proper use for this evidence under Rule 404(b) and that it should be excluded under Rule 403 as unfairly prejudicial and misleading to the jury. *Id*. at 4–5. The introduction of the call would be unfairly prejudicial because would "[t]he language used in the call would very likely adversely affect the jury's attitude toward Mr. Robertson." *Id*. at 5. And the call would mislead the jury because it would call for speculation and lead jurors to draw false inferences. *Id*. Finally, regarding Government's Exhibit 41(3), Mr. Robertson argues that while his identity as SS is clearly an issue at trial, the government can establish that connection through witness testimony and the admission of the phone call would be "cumulative and again unfairly prejudicial." *Id*. at 5–6.

4

DISCUSSION

The Court has considered the parties' arguments and the transcript and audio of the calls. It first finds that Government's Exhibit 41(3), the 53-second clip of the jail call in which Mr. Robertson tells his girlfriend to tell a third person that she is "SS's girlfriend," is admissible. Doc. 413 at 3. The identity of the person known as "SS" is a central issue at trial because that was the name the victim, D.S., first used when identifying the person who shot him. *Id*. The clip in Exhibit 41(3) is highly relevant to that issue because it includes Mr. Robertson's self-identification as "SS." *Id*. Although Mr. Robertson argues that the call is unnecessarily cumulative because the government has other witnesses who will testify to his identity as "SS," the defense could attack those identifications as mistaken or the product of witness bias. Doc. 419 at 5–6. That is much harder to do with the jail call, however, because Mr. Robertson is the person linking himself to the name "SS." Doc. 413 at 3. The call is therefore different from the other evidence on this point and it is not unnecessarily cumulative under Rule 403. Fed. R. Evid. 403. Nor has Mr. Robertson explained why its introduction would be unfairly prejudicial. The audio clip in the exhibit is brief and does not contain any bad language or innuendo. *See id*. at Ex. 2. Nor does it give away the fact that Mr. Robertson is in custody. *See id.* The call's probative value is therefore not outweighed by a risk of unfair prejudice and it is admissible under Rule 403. Fed. R. Evid. 403.

The same cannot be said for Government's Exhibit 41(2), however. The Court agrees with the defense that the call is hard to follow, the government's theories of relevance are based on speculation, and any probative value the call has is substantially outweighed by a serious risk that its admission would mislead the jury or cause Mr. Robertson unfair prejudice. As the Supreme Court has explained, "unfair prejudice" within the meaning of Rule 403 means "an undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one."

*Old Chief v. United States*, 519 U.S. 172, 180 (1997) (citation omitted). Put differently, evidence is unfairly prejudicial if it "lure[s] the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Id*. Several aspects of Exhibit 41(2) create a risk of unfair prejudice. For one, the call is replete with profanity from both Mr. Robertson and the other participant. By the Court's count, Mr. Robertson alone uses 15 curse words in the first three pages of the relevant portion of the transcript. *See* Doc. 413 Ex. 1 at 4–6. While some jurors may not be bothered by that level of profanity, it could easily offend others and cause the kind of animus towards Mr. Robertson that tends to "suggest decision on an improper basis, commonly though not necessarily, an emotional one." *Old Chief*, 519 U.S. at 180. The call contains other highly inflammatory statements as well, including when Mr. Robertson says he is "trying to bite a [sic] eyeball out" of someone's "fucking face" and that he's "squeezing balls and yanking." Doc. 413 Ex. 1 at 6. Finally, the call contains several hints that Mr. Robertson is in custody, including the discussions of people in his "pod" and the people who want to "jump" him. *Id*. If members of the jury learn that Mr. Robertson was in custody leading up to the trial, they could assume he is guilty or dangerous, or hold it against him in other improper ways that are unrelated to the "proof specific to the offense charged." *Old Chief*, 519 U.S. at 180.

While these risks of unfair prejudice might be acceptable if Exhibit 41(2) was highly relevant to the issues at trial and strongly probative, it is not. Nor is the Court persuaded by the government's arguments on these points. The government argues, for example, that the call demonstrates Mr. Robertson's "willingness to use violence to solve his perceived problems" as well as his motive and intent to punish those he views as "snitches." Doc. 413 at 5. In so arguing, the government is essentially admitting that it wants to introduce the call as evidence that Mr. Robertson has a propensity for violence in general and a propensity for violence against "snitches"

6

in particular. From an evidentiary standpoint, few things could be more improper. Under Rule 404(b) of the Federal Rules of Evidence, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Although the government claims that the call is admissible for the proper Rule 404(b) purposes of motive and intent, the theory of relevance must still avoid "depend[ing] on a defendant likely acting in conformity with an alleged character trait." *United States v. Commanche*, 577 F.3d 1261, 1267 (10th Cir. 2009) (reversing conviction under Rule 404(b) due to improper evidence of a defendant's propensity for violence). As the Third Circuit explained in *United States v. Himelwright*, "when evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, *no link of which may be the inference that the defendant has the propensity to commit the crime charged*." 42 F.3d 777, 782 (3d Cir. 1992) (emphasis added). Propensity evidence is also problematic under Rule 403 because it creates "the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment." *Old Chief*, 519 U.S. at 181 (citation omitted).

The Court is similarly unmoved by the argument that Exhibit 41(2) is admissible to demonstrate Mr. Robertson's "use of paperwork to determine who is a 'snitch.'" Doc. 413 at 4. This is another example of improper propensity evidence, and even if not, Mr. Robertson's allusions to snitching on the call are unclear and are therefore of limited evidentiary value to this case. Further, as the government acknowledges in its response, it has much more directly relevant evidence on this point in the form of N.F.'s testimony that Mr. Robertson "specifically complained that the victim was a 'snitch' because paperwork seemed to indicate he had said another fellow's name." *Id*. Given this alternative, the evidentiary value of the jail call is significantly reduced and

7

it is substantially outweighed by its prejudicial effect. *See Old Chief*, 519 U.S. at 182–83 ("If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk.").

Finally, the government argues that Exhibit 41(2) should be admitted to show Mr. Robertson's "participation in witness intimidation on behalf of others" and "expectation that others will assist him in intimidating witnesses." Doc. 413 at 4. The Court understands why the government would interpret the call in that way given Mr. Robertson's repeated statements about his need for people to show up to court on his behalf and his statements that he wants people to "play chess, not checkers" and "go[] to bat" for him. *See, e.g.,* Doc. 413 Ex. 1 at 10–11. The Court also agrees that evidence of witness tampering or intimidation could be relevant to show a defendant's consciousness of guilt. Ultimately, however, Mr. Robertson's statements on the call are unclear and they could just as easily reflect far less sinister motivations, such as a desire for the Court to see his family and community support as it makes decisions on critical issues such as his release. In addition to the ominous-sounding statements above, Mr. Robertson also says that he needs people to "try[] to help [him] get through this shit" and he expresses a concern that if people do not show up at court, the government will "bury" him and "just do it quietly." *Id*. Rather than suggesting a consciousness of guilt, these statements are consistent with Mr. Robertson's proclamations of innocence. And they suggest a desire for public and emotional support rather than a desire to intimidate witnesses.

Given the ambiguous nature of the statements, it would be misleading for the government to introduce them to the jury as clear evidence of Mr. Robertson's intent to intimidate witnesses.

8

*See* Fed. R. Evid. 403. Such a use of the jail call would also create a strong risk of unfair prejudice because few suggestions could be more frightening and inflammatory to a juror than the suggestion that the defendant is willing to intimidate people involved with the court proceeding, such as themselves. Finally, given that Mr. Robertson is charged with attempting to kill a federal witness, evidence that he is also trying to intimidate witnesses in this case could easily be received as evidence of his propensity to commit the instant offense, raising concerns under Rules 403 and 404(b). *See* Fed. R. Evid. 403 and 404(b).

For all of these reasons, the Court finds that Exhibit 41(2) is of limited relevance, it contains several examples of improper propensity evidence under Rule 404(b), and it is substantially more prejudicial and misleading than it is probative under Rule 403. *See* Fed. R. Evid. 403 and 404(b). Mr. Robertson's objection to its admission at trial will therefore be sustained.

## CONCLUSIONS

For the reasons set forth above, Mr. Robertson's Notice of Stipulations and Objections to United State[s]'s Exhibits [Doc. 383] is hereby **GRANTED IN PART**. The government will be permitted to introduce the 53-second jail call audio clip marked as Government's Exhibit 41(3). It will not be permitted to introduce the longer jail call audio clip marked as Government's Exhibit 41(2).

DATED this 30th day of April, 2021.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE